**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| FAREED NASSOR HAYAT, | ) | **FIRST AMENDED COMPLAINT** |
| an individual | ) | |
| 200 E. Lexington | ) | |
| Suite 1111 | ) | |
| Baltimore, MD 21202 | ) | Case No.: 8:20-cv-2994-PWG |
| | ) | |
| Plaintiff | ) | Date Complaint Filed: October 15, 2020 |
| | ) | |
| | ) | |
| v. | ) | Date: February 16, 2020 |
| | ) | |
| SGT. CASEY DIAZ, individually | ) | |
| and in official capacity | ) | |
| 100 Edison Park Drive | ) | |
| Gaithersburg, MD 20878 | ) | |
| | ) | |
| BROOKE DOLAN, individually | ) | |
| and in official capacity | ) | |
| 100 Edison Park Drive | ) | |
| Gaithersburg, MD 20878 | ) | |
| | ) | |
| NATHAN LENHART, individually | ) | |
| and in official capacity | ) | |
| 100 Edison Park Drive | ) | |
| Gaithersburg, MD 20878 | ) | |
| | ) | |
| MARCUS G. JONES, in his | ) | |
| official capacity | ) | |
| 100 Edison Park Drive | ) | |
| Gaithersburg, MD 20878 | ) | |
| | ) | |
| MONTGOMERY COUNTY, MD, | ) | |
| a municipal entity, | ) | |
| 100 Edison Park Drive | ) | |
| Gaithersburg, MD 20878 | ) | |
| | ) | |
| NICOLE MIN, individually | ) | |
| and in official capacity | ) | |
| 100 Edison Park Drive | ) | |
| Gaithersburg, MD 20878 | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

COMES NOW, Plaintiff, FAREED NASSOR HAYAT, and for a First Amended Complaint against Defendants Sgt. CASEY DIAZ, BROOKE DOLAN, NATHAN LENHART, NICOLE MIN, MARCUS JONES, and MONTGOMERY COUNTY, MD, for violation of Federal and State Constitutional rights, alleges as follows:

## JURISDICTION AND VENUE

1. This action arises under the Constitution of the United States, the Civil Rights Act, 42 U.S.C. § 1983; the laws of the State of Maryland, the laws of Montgomery County, Maryland, and the common law.

2. The jurisdiction of this court is invoked under the provisions of 28 U.S.C. §1331, 1343, 2201 and the common law.

3. Venue is proper in the District Court of Maryland pursuant to 28 U.S.C. §1391 because all relevant events and omissions complained of occurred within the State of Maryland and all defendants either reside or maintain offices in the State of Maryland.

## PARTIES

4. Mr. Hayat, Plaintiff, was a resident of Montgomery County, MD, and at all times relevant to this First Amended Complaint, employed as a professor of law at Howard University School of Law as well as owning and operating a civil rights and criminal defense law firm.

5. The defendant, Officer Casey Diaz, who is sued in his individual and official capacities, is now, and was at all relevant times, an officer of the Montgomery County Police Department and was acting under color of law in his capacity as a law enforcement officer employed by Montgomery County and/or of the Police Department.

6.   The defendant, Officer Brooke Dolan, who is sued in his/her individual and official capacities, is now, and was at all relevant times, an officer of the Montgomery County Police Department and was acting under color of law in his capacity as a law enforcement officer employed by Montgomery County and/or of the Police Department.

7.   The defendant, Officer Nathan Lenhart, who is sued in his individual and official capacities, is now, and was at all relevant times, an officer of the Montgomery County Police Department and was acting under color of law in his capacity as a law enforcement officer employed by Montgomery County and/or of the Police Department.

8.   The defendant, Officer Nicole Min, who is sued in her individual and official capacities, is now, and was at all relevant times, an officer of the Montgomery County Police Department and was acting under color of law in her capacity as a law enforcement officer employed by Montgomery County and/or of the Police Department. Defendant Min has been aware of Plaintiff's intent to sue and of her role in the facts supporting this suit at all times since the incident described in Paragraphs 18 through 43 of this First Amended Complaint. Plaintiff did not name Ofc. Min in his original complaint because he believed her to be Ofc. Dolan.

9.   At all times relevant to this action, the "Officer Defendants" were acting under color of law under their authority as Police Officers of the Montgomery County Police Department, and under color of the statutes, ordinances, regulations of Montgomery County and policies, customs and usage of the Montgomery County Police Department. The term "Officer Defendants" as used in this First Amended Complaint shall mean Sgt. Casey Diaz, Ofc. Nicole Min, Ofc. Brooke Dolan, and Ofc. Nathan Lenhart, and all unknown Defendants herein sued as "Does 1-10."

10. Defendant Marcus Jones is sued in his official capacity as the Chief of the Montgomery County Police Department, and is employed by the Defendant Montgomery County and/or the

Montgomery County Police Department, and was acting under color of state law.  As the Chief of the Montgomery County Police Department, provided deliberately indifferent training to Officers Diaz, Dolan Min, and Lenhart, he further provided deliberately indifferent supervision and discipline.  Chief Jones further was deliberately indifferent in hiring Officers Diaz, Dolan, Min, Lenhart, and unknown officers involved in the initial breaking and entering and subsequent trespass, and was deliberately indifferent in failing to adopt policies necessary to prevent constitutional violations to the plaintiff.  His actions or inactions were a moving force in and had a direct causal link to the injuries to plaintiff.

11. Montgomery County is a municipal corporation in the United States and at all times relevant to this action were the employers of the defendants.

12. Montgomery County is properly sued directly under 42 U.S.C. § 1983 for its own and its delegated deliberately indifferent unconstitutional decisions, policies, practice, habits, customs, usages, training and derelict supervision, ratification, acquiescence and intentional failures which were moving forces in and directly resulted in the complained of constitutional and statutory violations and resulting injuries to plaintiff.

13. Defendant Montgomery County and Defendant Jones are properly sued directly under 42 U.S.C. § 1983 for their own and their delegated deliberately indifferent unconstitutional decisions, policies, practice, habits, customs, usages, training and derelict supervision, ratification, acquiescence and intentional failures which were moving forces in and directly resulted in the complained of constitutional and statutory violations and resulting injuries.

14. Montgomery County is also properly sued under 42 U.S.C. § 1983 for the challenged delegated final decisions of Defendant Jones in his official capacity as the Chief of the Montgomery County Police Department, and for those of any final delegated decision makers,

with respect to the hereinafter challenged deliberately indifferent policies, decisions, widespread habits, customs, usages and practices.

15. All defendants are jointly and severally liable for damages and injuries to plaintiff.

## STATEMENT OF FACTS

16. On the evening of October 22, 2017, Plaintiff Fareed Hayat attended a homecoming celebration for former classmates and their families.

17. Mr. Hayat arrived home from the gathering in the evening hours.

18. Shortly after their arrival home, two police officers, Defendants Sgt. Casey Diaz and Ofc. Nicole Min, pulled into Mr. Hayat's driveway on Eastmoor Drive in Silver Spring, MD and approached the house.

19. Mr. Hayat greeted the officers at the porch doorway and politely asked the police officers what had brought them to their home.

20. Defendant Diaz informed Mr. Hayat, and Mr. Hayat's wife who was present, that police had received a call about a kidnapping, and he and Min were there to investigate the report.

21. Mr. Hayat, his wife and Defendants Diaz and Min had a routine conversation wherein Mr. Hayat and his wife informed Diaz and Min of their ownership of the house, their employment status, and the status of their children who were in the house.

22. Defendants Diaz and Min then asked to enter Mr. Hayat's home so that they could check on the status of Mr. Hayat's children.

23. Mr. Hayat respectfully declined Diaz and Min's request to enter the house.

24. Considering the matter resolved and having understood himself to have broken no laws, Mr. Hayat and his wife began to walk inside their house and close the door.

25. Before Mr. Hayat could completely close the door, Diaz and Min began forcing their way into Mr. Hayat's home and preventing Mr. Hayat from closing the door. Defendants Diaz and Min did so, at least in part, because Mr. Hayat had asserted his right to be left alone and to preclude police from entering his home.

26. Mr. Hayat stood on the inside of his door in his home and attempted to maintain the sanctity of home and assert his absolute and unfettered right to be left alone by simply closing the door.

27. Defendants Diaz and Min disregarded and refused to honor Mr. Hayat's right to be left alone inside the sanctity of home.

28. Instead, as Mr. Hayat attempted to close his door, Defendants Diaz and Min struggled to illegally enter Mr. Hayat's home by forcing their way through the door.

29. In an effort to assist in the illegal entry of Mr. Hayat's home, multiple other officers, including Defendants Lenhart, Dolan, and Does 1-10, arrived at the scene and under color of authority did illegally enter Mr. Hayat's home by overpowering Mr. Hayat and forcing their way in.

30. Defendants Lenhart and Dolan illegally entered Mr. Hayat's home at this time.

31. Defendants Diaz and Lenhart tackled Mr. Hayat and handcuffed him and smashed their knees into Mr. Hayat's spine as Mr. Hayat lay defenseless on his floor.

32. Mr. Hayat had broken no laws.

33. Mr. Hayat was unarmed.

34. At no time during the incident did Mr. Hayat pose a threat to police or any other person.

35. At no time during the incident did the police have probable cause to arrest Mr. Hayat.

36. At not time during the incident did the police have reasonable, articulable suspicion to detain Mr. Hayat.

37. At all times during this incident, Mr. Hayat had an unfettered right to be left alone on his own property and to decline to speak with police officers and to preclude police officers from entering his home.

38. Mr. Hayat's children came upstairs as a result of the struggle and stood screaming in the living room for their father's life. Mr. Hayat's wife began screaming, pleading for the officers not to kill her husband. Mr. Hayat's sister, who was visiting for the weekend, was also present.

39. Officers began to ask Mr. Hayat's wife and sister whether the children were "all right." The children were standing in the room visibly in shock. At no point during this incident did any of the officers who had broken into Mr. Hayat's home direct any questions to the children nor did they conduct any investigation into the health, safety and/or well-being of the children.

40. The officers then began to comment on Mr. Hayat's car, saying that if they had known the car had rear-facing seats, they would have assumed that reports of a suspect putting children in the trunk of a car was harmless. The Defendants who had broken into Mr. Hayat's home knew that his car had rear-facing seats based on reporting from police dispatch before they arrived at his residence.

41. One of these Defendants commented that the incident wouldn't have happened if Mr. Hayat's car was not so expensive.

42. All officers then left the residence.

43. On information and belief, Defendant Diaz contacted Child Protective Services after the incident and made a knowingly false report.

44. Defendants were acting within the course and scope of their employment with the Montgomery County Police Department, which is an agency of Montgomery County, MD.

45. At all times herein, Defendants' actions were taken in furtherance of their duties as Montgomery County police officers.

46. The actions of the officers were not designed to quell any exigency.  Indeed, any perceived exigency had been extinguished by the conversation that had taken place outside of Mr. Hayat's home.  The actions of the officers were in fact to designed to teach Mr. Hayat to "stay in his place" and that it is inappropriate for an African-American to know and assert his rights.

47. In the alternative, both Defendants Diaz and Min were acting with malice and specific animus toward Mr. Hayat when they illegally entered Mr. Hayat's home by force under color of state law and physically assaulted Mr. Hayat. Diaz and Min's malice is demonstrated by the fact that they intended to punish Mr. Hayat for refusing to give consent to a search of his residence, and, in the case of Defendant Diaz, in calling child protective services in the absence of any concern and knowing that no reportable event had actually occurred.

### FIRST CAUSE OF ACTION
(Battery – Against Defendants Diaz, Min, Dolan, Lenhart, Montgomery County, and Does 1-10)

48. Plaintiff repeats, re-alleges, and incorporates each previously stated allegation as though set forth in full herein.

49. Defendants Diaz, Min, Dolan, Lenhart, and Does 1-10 illegally entered Mr. Hayat's home by force and slammed Mr. Hayat to the floor under color of state law.

50. The Officer Defendants intended to cause and did cause Mr. Hayat to suffer immediate harmful contact.

51. Each of the acts described above were done intentionally and in order to punish Mr. Hayat for exercising his lawful right to be secure in the sanctity of his home and for refusing to provide consent to a search of his home.

52. Mr. Hayat suffered a number of bruises and other injuries as a result of Defendants' Diaz Min, Dolan, Lenhart's, and Does 1-10's uninvited contact.

53. Mr. Hayat was humiliated in front of his wife, children and other family members as a result of the incident, and as such experiences fear when interacting with police officers.

54. Mr. Hayat's children were terrified as a result of the incident, and now fear for their lives and the lives of their family members when they interact with police officers. Mr. Hayat has been required to seek mental health treatment for his children as a result of the trauma caused by the incident.

55. Mr. Hayat's children are two young African American boys. Mr. Hayat will be forced to incur future costs related to his children's psychological and social development as a result of their fear of police officers.

56. Defendant Montgomery County is named as a Defendant to this cause of action for the tortious acts of its agents.

### SECOND CAUSE OF ACTION
(Trespass – Against Defendants Diaz, Min, Dolan, Lenhart, Montgomery County, Does 1-10)

57. Plaintiff repeats, re-alleges, and incorporates each previously stated allegation as though set forth in full herein.

58. Without Mr. Hayat's consent, Defendants Diaz, Min, Dolan, Lenhart, and Does 1-10 illegally entered Mr. Hayat's home by force, pushing their way into the home under color of state law.

59. Defendants Diaz, Min, Dolan, Lenhart, and Does 1-10 intentionally engaged in the conduct described above.

60. Mr. Hayat repeats and incorporates his allegations concerning damages contained in Paragraphs 52-55 as though stated forth in full herein.

61. A few days after the incident, Mr. Hayat's brother found other Montgomery County police officers in Mr. Hayat's backyard while Mr. Hayat and his wife were away working. When Mr. Hayat's brother inquired why the officers were there, they stated that they were investigating a burglary.

62. Mr. Hayat's brother granted the officers consent to search the house, not wanting to be attacked as Mr. Hayat had been.

63. After about thirty minutes, the officers investigating the burglary left the residence without providing Mr. Hayat's brother with any further information.

64. On information and belief, these officers had received no call for a possible burglary, but were rather conducting surveillance on Mr. Hayat's home in an attempt to justify their previous breaking and entering and place Mr. Hayat in a state of terror.

65. For these reasons, this second trespass was part and parcel of the original attempt to punish Plaintiff for asserting his constitutional rights. The identities of these officers are unknown, and they are sued under the fictitious name "Does 1-10" for that reason. Plaintiff will amend this First Amended Complaint once their true identities are discovered.

66. Mr. Hayat experienced heightened mental distress as a result of Montgomery County police officers' continued efforts to surveil his home and intimidate his family members for the remainder of the time that Mr. Hayat resided in Maryland.

67. As a result of these additional trespasses, Mr. Hayat and his family remained apprehensive while staying at their home and while interacting with police officers outside of it.

### THIRD CAUSE OF ACTION
(False Imprisonment – Defendants Diaz, Min, Dolan, Lenhart, Mont. Co., Does 1-10)

68.  Plaintiff repeats, re-alleges, and incorporates each previously stated allegation as though fully set forth herein.

69. Defendants Diaz, Min, Dolan, and Lenhart, as well as unknown Defendants employed by the Montgomery County police force, deprived Mr. Hayat of his liberty and freedom of movement in his home when they illegally entered Mr. Hayat's home by force after Mr. Hayat exercised his absolute right to be left alone by declining to provide consent to Defendants request to enter the home.

70. These Defendants deprived Plaintiff of his liberty and freedom of movement in his home by slamming him to the floor of his home and handcuffing him.

71. Defendants intentionally obstructed and detained Mr. Hayat.

72. Mr. Hayat reasonably believed that it would be dangerous for him to attempt to flee while this detention was taking place as the Defendant Officers handcuffed him.

73. None of the acts described above were performed with legal justification.

74. None of the acts described above were performed with Plaintiffs' consent.

75. Plaintiff repeats and incorporates his allegations concerning damages contained in Paragraphs 52-55 as though stated forth in full herein.

### FOURTH CAUSE OF ACTION
(Violation of Fourth Amendment Rights - 42 U.S.C. § 1983 – against Diaz, Dolan, Min, Lenhart, Jones, Montgomery County, and Does 1-10)

76.  Plaintiff repeats and incorporate each previously stated allegation as though set forth in full herein.

77. Title 42, Section 1983 of the United States Code provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

78. Pursuant to the Fourth Amendment to the U.S. Constitution, at all times relevant to this First Amended Complaint, Mr. Hayat had a "right to be secure in their persons, houses, papers, and effects. . ."

79. The Fourth Amendment guarantees that Mr. Hayat's home shall not be entered by police officers without a warrant based "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, or the persons or things to be seized."

80. The Fourth Amendment guarantees that Mr. Hayat's home shall not be entered by police officers without a legitimate exception to the warrant requirement stated above.

81. The Fourth Amendment guarantees that Mr. Hayat shall not be subjected to unreasonable and excessive force.

82. Each of these constitutional guarantees were well-established at the time of the events described in this First Amended Complaint.

83. "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States* v. *United States District Court,* 407 U. S. 297, 313 (1972).

84. For this reason, "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton* v. *New York,* 445 U. S. 573, 586 (1980); see *Coolidge* v. *New Hampshire,* 403 U. S. 443, 474-475 (1971).

85. On information and belief, Defendants Diaz and Min had performed a background check on Mr. Hayat and the license plates to his car. As a result of this background check, each of the Defendants to this claim knew all relevant identifying information regarding Mr. Hayat, including his place of employment, his place of residence, the names of his children, and the name of his wife. Each of these items of information was verified during the conversation with Mr. Hayat at his door and outside of Mr. Hayat's home.

86. As a result of this knowledge, none of these Defendants had reason to believe that Mr. Hayat had kidnapped his own children.

87. At no point did Diaz, Min, Dolan, Lenhart or any of Does 1-10 check on the status of the children after breaking into Mr. Hayat's home.

88. All four officers were acting under color of state law at all times relevant to this First Amended Complaint, and took the actions described herein while in full uniform and wearing badges indicating their official status.

89. Defendants Diaz, Min, Dolan, Lenhart, and Does 1-10's actions and use of force, as described herein, were objectively unreasonable in light of the facts and circumstances confronting them and violated these Fourth Amendment rights of Mr. Hayat.

90. Defendants Diaz, Min, Dolan, Lenhart, and Does 1-10's actions and use of force, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Mr. Hayat's federally protected rights. The force used by these Defendant officers

shocks the conscience and violated Mr. Hayat's rights under the Fourth and Fourteenth Amendments of the Constitution of the United States.

91. Defendants Diaz, Min, Dolan, Lenhart, and Does 1-10 unlawfully seized Mr. Hayat by means of objectively unreasonable, excessive and conscious shocking physical force, thereby unreasonably restraining Mr. Hayat of his freedom.

92. The force used constituted deadly force in that it could have caused death and did cause serious bodily injury.

93. None of the Officer Defendants named above took reasonable steps to protect Mr. Hayat from the objectively unreasonable and conscience-shocking excessive force of other officers. They are each therefore liable for the injuries and damages resulting from the objectively unreasonable and conscience shocking force of each other officer.

94. Defendants Diaz, Min, Dolan, Lenhart, and Does 1-10 engaged in the conduct described by this First Amended Complaint willfully, maliciously, in bad faith, and in reckless disregard of Mr. Hayat's federally protected constitutional rights.

95. Each of the Defendants named above did so with shocking and willful indifference to Mr. Hayat's rights and their conscious awareness that they would cause Mr. Hayat severe physical and emotional injuries.

96. The acts or omissions of each of the Defendants named above were moving forces behind Mr. Hayat's injuries.

97. On information and belief, and as a cause of action against Montgomery County as a separate Defendant and government entity, there is a policy and practice among police officers employed by the County of breaking into citizens' homes when the citizens do not consent to a search of the citizens' homes.

98. On information and belief, this policy and practice is either written or is so significant and widespread within the Department that it governs the conduct of the Department's officers as though it had the force and effect of law.

99. On information and belief, the Defendants were trained that breaking into citizens' houses if they refused to provide consent was acceptable, or were not subjected to discipline for doing so.

100. On information and belief, this conduct was widespread throughout the Department during the time period described in this First Amended Complaint, and for a significant period before and after the events described herein.

101. Mr. Hayat reserves the right to amend his First Amended Complaint and this cause of action as facts are developed throughout the course of discovery and litigation.

102. As employers of the officers, Defendants Montgomery County negligently trained, hired, retained and supervised Defendants Diaz, Min, Dolan, Lenhart, and Does 1-10.

103. The acts of Defendants Diaz, Min, Dolan, Lenhart and Does 1-10 were direct and proximate causes of Mr. Hayat's injuries.

104. Defendants Jones and Montgomery County knew or should have known that the Officer Defendants behaved and performed as officers in a dangerous and/or incompetent manner.

105. Although Defendants Jones and Montgomery County knew that these officers behaved and performed as officers in a dangerous or incompetent manner, they failed to adequately supervise them.

106. The policies identified above and in Paragraphs 10 through 14 were the moving force behind the violations of Plaintiff's Fourth Amendment rights as alleged herein.

107.      Plaintiff repeats and incorporates his allegations concerning damages contained in Paragraphs 52-55 as though stated forth in full herein.

### FIFTH CAUSE OF ACTION
(Violation of MD. Decl. of Rights Articles 24 and 26 – against Defendants Diaz, Min, Dolan, Lenhart, Montgomery County, and Does 1-10)

108.      Plaintiff repeats and incorporates each previously stated allegation as though set forth in full herein.

109.      Because violations of Articles 24 and 26 are read *in pari materia* with the Fourth Amendment of the U.S. Constitution, Plaintiff's cause of action stated above also states a violation of Articles 24 and 26 of the MD. Decl. of Rights.

### SIXTH CAUSE OF ACTION
(Violation of 14th Amendment Right to Familial Privacy – 42 U.S.C. § 1983 – against Defendants Diaz, Min, Dolan, Lenhart, Jones, Montgomery County, and Does 1-10)

110.      Plaintiff repeats and incorporates each previously stated allegation as though set forth in full herein.

111.      At all times relevant to this First Amended Complaint, Plaintiff had an absolute right to be free from direct and substantial interference from the Maryland state government in the act and effort of raising their children.

112.      Federal and Maryland law provide that all parents are presumed to have the right to raise their children the way they want without unjustified and willful interference from the government. *Troxel v. Granville*, 530 U.S. 57, 66-67 (2000); *Koshko v. Hining*, 398 Md. 404, 439 (2007). These rights were well-established and unquestioned at all times relevant to this First Amended Complaint.

113.     Defendants substantially interfered with Mr. Hayat's right to raise his children when they threatened Mr. Hayat's life under the guise of attempting to ensure the children's well-being, and by contacting child protective services in the absence of concern.

114.     Plaintiff's children were under no threat of any form of abuse or mistreatment when the Officer Defendants broke into Plaintiff's home without his consent.

115.     Defendant Diaz and Does 1-10 were motivated by malice and personal spite when they called child protective services after they broke into Mr. Hayat's home.

116.     As a result of Defendants' conduct, Plaintiff suffered an unwelcome intrusion into the manner in which he raised his children by the state through threat of deadly force. Mr. Hayat is now required to educate his sons on the dangers of interacting with police officers, and instruct them on how they must act in order to avoid being killed, severely injured, or subjected to assault in the first degree by a police officer purporting to act in the line of duty.

117.     As a result of Defendants' conduct, Mr. Hayat has lost the value of enjoyment of raising his children without a palpable fear of being murdered or subjected to bodily harm by the police.

118.     Defendants Jones and Montgomery County's maintenance of policies and practices alleged in Paragraphs 10 through 14 and 98 through 105 of this First Amended Complaint were the moving force in the violations of Plaintiff's rights to familial privacy as well as his rights to security in his home.

## SEVENTH CAUSE OF ACTION
(Violation of Property Rights - 42 U.S.C. § 1982 – against Defendants Diaz, Min, Dolan, Lenhart, Montgomery County, and Does 1-10)

119.      Plaintiff repeats and incorporates each previously stated allegation as though set forth in full herein.

120.     42 U.S.C. § 1982 provides that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

121.     Mr. Hayat is African American, who at all times relevant to this First Amended Complaint resided in Montgomery County, MD.

122.     Mr. Hayat's interest in the quiet enjoyment of his property, and in the right to exclude unwanted guests, was denied by the acts described herein.

123.     On information and belief, Montgomery County residents who are of European descent have had similar encounters with police regarding consent to perform warrantless searches of their home that do not result in officers breaking into their home, throwing them to the ground, and placing them in immediate fear of death.

124.     On information and belief and based on the facts and circumstances surrounding the break-in, the call to child protective services, and the subsequent surveillance, the acts of the Officer Defendants described herein would not have occurred but for Mr. Hayat's African ancestry.

125.     Defendant Montgomery County is liable for the actions of its agents, including the Officer Defendants' violation of Plaintiff's property rights to exclude unwanted intruders, and including Defendant Jones' failures to adequately supervise and discipline Montgomery County Police Officers as alleged herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court award him the following relief:

1.  Compensatory damages in an amount to be proven at trial;

2.  Punitive Damages in a proportionate amount to deter future conduct from the

    Montgomery County Police Department;

3.  Injunctive relief in the form of police training and education;

4.  Attorneys Fees and costs pursuant to 42 U.S.C. §§ 1988;

5.  Prejudgment interest at a rate of 10%.


Date: February 16, 2020          /s/ Masai McDougall          /s/
                                 Masai McDougall, Esq.
                                 The People's Law Firm, LLC
                                 200 E. Lexington St., Suite 1111
                                 Baltimore, MD 21202
                                 masai.mcdougall@thepeopleslawfirm.net